USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/26/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

JAMES BERTRAM,

                Plaintiff,

        -v-

METROPOLITAN TRANSPORTATION
AUTHORITY, KATHLEEN FINNERAN,
ROBERT TERRETT, KEVIN KIERAN, JOHN
FITZPATRICK, GREGORY BUEHLER, and
RYAN RUSSELL,

                Defendants.

---------------------------------------------------------------X

No. 13 Civ. 338 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

    Plaintiff James Bertram brings this action pursuant to 42 U.S.C. § 1983 and New York tort law against the Metropolitan Transportation Authority ("MTA") and six of his supervisors at the MTA. Plaintiff, a police officer at the MTA, alleges that these supervisors harassed him, threatened him, and subjected him to numerous unjustified disciplinary actions. Defendants move to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Plaintiff's § 1983 claims are dismissed, and supplemental jurisdiction over Plaintiff's remaining state law claim is declined.

### I. Background

    For purposes of this Motion, the Court accepts as true all facts alleged by Plaintiff in his Complaint. See Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).

    Plaintiff has worked as a police officer at the MTA "since in or about 2003," where he has been supervised by the individual Defendants. (Am. Compl. ¶¶ 7, 15.) According to

Plaintiff, his supervisors' conduct toward him started to change "on or about February 24, 2011." (Id. at 20.) At that time, Defendant Kathleen Finneran, an Assistant Chief of Police, instructed Defendant Robert Terrett, a police inspector and commanding officer, to issue a Letter of Instruction stating that Plaintiff had not been wearing his hat on patrol. (Id. ¶¶ 8-9, 20-22.) The letter was issued on March 9, 2011. (Id. ¶ 22.) Such letters "permanently remain[] in an officer's personnel file and . . . can affect . . . transfers and promotions." (Id. ¶ 23.) In addition, Finneran and Terrett, together with Defendants Gregory Buehler and Ryan Russell, both police sergeants, arranged to assign Plaintiff to desk duty at the base ("base duty") every day for the next several months. (Id. ¶¶ 12-13, 24-25, 30, 46.)

Base duty is considered a punishment, and officers generally are not required to perform base duty on a regular basis. (Id. ¶ 26.) "No one else was assigned to the same post every[ ]day." (Id. ¶ 46.) Russell and Buehler told Plaintiff that he was being continually assigned to base duty because that was what Terrett wanted. (Id. ¶¶ 30, 32.) Beuhler told Plaintiff "[t]hey are looking to get you," and "Plaintiff was also advised that defendant Finneran 'had it out for him.'" (Id. ¶¶ 31, 33.) As further "punishment," Plaintiff was required to transport prisoners while he was assigned to base duty, even though that task had not been assigned to other officers while they were on base duty. (Id. ¶ 47.)

Terrett also allegedly made statements to Plaintiff while Plaintiff was on base duty that he found to be threatening and intimidating. (Id. ¶¶ 27-29.) In particular, on March 4, 2011, Terrett told Plaintiff to "get used to the base." (Id. ¶ 27.) The next day, Terrett telephoned Plaintiff at the base and asked how Plaintiff "liked" it. (Id. ¶ 28.) The day after that, Terrett telephoned Plaintiff again, "asked him 'how much time' he had on the job," and told him "I don't think you are going to make it." (Id. ¶ 29.)

The Complaint further alleges that, after assigning Plaintiff to base duty, the individual Defendants began to "look[] for every picayune reason to punish [Plaintiff]." (Id. ¶ 34.) Plaintiff received additional Letters of Instruction on March 9, 2011 and March 27, 2011, because Terrett said that Plaintiff did not answer the telephone or record information in the District Log correctly. (Id. ¶¶ 35, 37, 38.) On or about April 1, 2011, Defendant Kevin Kieran, a police captain, caused a more severe form of reprimand—a "Command Discipline"—to be issued to Plaintiff for improperly answering the telephone and recording log entries. (Id. ¶¶ 10, 39, 43.) Because of the Command Discipline, Plaintiff was "required to forego thirty-six (36) hours of accrued leave time." (Id. ¶ 42) Terrett told Plaintiff that "next time 'it would not be a Command Discipline, but a suspension.'" (Id. ¶ 40.) Terrett's conduct caused Plaintiff to feel "threatened that he was being singled out and targeted for no justified reason." (Id. ¶ 41.) According to Plaintiff, the Letters of Instruction and Command Discipline "were neither deserved [n]or justified." (Id. ¶ 43.)

Another incident allegedly occurred on April 7, 2011. (Id. ¶ 44.) Plaintiff and a fellow officer were standing and talking while taking a break, when the other officer warned Plaintiff that Defendant John Fitzpatrick, a police captain, was walking toward them. (Id. ¶¶ 11, 44.) Plaintiff—who had not been wearing his hat initially—put his hat on as Fitzpatrick approached. (Id. ¶ 44.) As Fitzpatrick walked by, he told Plaintiff that the other officer had "saved [Plaintiff's] life." (Id.) Plaintiff characterizes Fitzpatrick's statement as a threat and alleges that it made him very uncomfortable. (Id.)

In August 2011, two Internal Affairs officers visited Plaintiff while he was working in Staten Island and told him that he was being suspended from duty. (Id. ¶ 48.) Plaintiff asked the officers why he was being suspended and requested a written explanation, but they said they

3

knew only that the suspension related to an incident that had occurred the previous Friday and involved Buehler. (Id.) They did not provide Plaintiff any other details or anything in writing. (Id.) Plaintiff was suspended for two weeks and then placed on modified duty for another two weeks upon his return. (Id. ¶ 49.) Plaintiff alleges that he "was never asked his side of the story," and no one told him the reason for his two-week suspension until after he had already been on modified duty for a week. (Id. ¶¶ 48-49.) Suspension, he claims, is a more severe punishment than the punishments received by other officers who had committed more severe violations than the violation he committed. (Id.) The Complaint does not provide the reason given to Plaintiff as to why he was suspended, nor does it assert that Plaintiff did not commit the underlying violation.

On January 27, 2012, a lieutenant told Plaintiff that Terrett and Fitzpatrick had reported to him that Plaintiff was not wearing his hat while he was on patrol, even though Plaintiff had not seen Terrett or Fitzpatrick that day. (Id. ¶ 55.) According to the lieutenant, Terrett and Fitzpatrick had reported that Plaintiff, upon seeing them, had turned and walked away. (Id.) The lieutenant "wrote in plaintiff's memo book 'Officer instructed to wear uniform hat while on uniformed patrol.'" (Id.)

On yet another occasion, Finneran and another officer sent an email to all of the communications and operations supervisors directing them to follow special procedures when Plaintiff called in sick; these procedures were allegedly applied only to Plaintiff. (Id. ¶ 50.) In addition, he claims that certain supervisors and officers were instructed "not to be friendly with [him]," to "stay away" from him, and "to harass and target [him]." (Id. ¶¶ 51-52, 54.)

Plaintiff does not deny that he committed the violations for which he was disciplined. Rather, the main thrust of Plaintiff's allegations is that, when other offices committed the same

4

offenses for which he was disciplined, those officers were either not disciplined at all or were disciplined less harshly than Plaintiff.  (See id. ¶ 20 ("[I]t is not uncommon for officers on patrol not to wear their hat[s]."); id. ¶ 34 ("Matters that would otherwise be ignored for anyone else, became a 'big deal' for plaintiff."); id. ¶ 39 ("Plaintiff received the Command Discipline for . . . not answering the telephone properly and not properly recording entries in the District Log—matters which, with anyone else, would have been overlooked by defendants."); id. ¶ 49 ("Plaintiff was suspended, despite the fact that other police officers committed more egregious infractions without receiving such a severe punishment."); id. ¶ 55 ("[P]laintiff had observed other supervisors and officers on patrol not wearing their hat[s].").)  It appears to be on this basis that Plaintiff asserts that the disciplinary actions "were neither justified [n]or deserved" and that "he was being singled out and targeted for no justified reason."  (Id. ¶¶ 41, 43, 56.)

## II.     Applicable Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. Proc. 8(a)(2).  In order to meet this pleading requirement and overcome a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).  "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint . . . [and] draw all reasonable inferences in favor of the plaintiff."  Kassner, 496 F.3d at 237 (citation omitted).

**III.    Discussion**

    **A. Procedural Due Process Claim**

Plaintiff first claims that Defendants are liable under § 1983 because they violated his Fourteenth Amendment right to procedural due process. (Am. Compl. ¶¶ 66-67.) He asserts that Defendants failed to "adhere to and administer . . . various procedures, policies, rules, regulations and contractual provisions in a fair and even handed manner and without regard to personal motives." (Id. ¶ 64.) More specifically, Plaintiff asserts that no one told him the reasons for his two-week suspension until after he had returned to work; that he "never received any written notification" of his suspension; and that he "was never asked his side of the story." (Id. ¶¶ 48-49.)

The Due Process Clause provides "a guarantee of fair procedure. . . . In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." Zinermon v. Burch, 494 U.S. 113, 125 (1990) (emphasis omitted). "[P]rocedural due process protects only important and substantial expectations in life, liberty, and property." New York State Nat. Org. for Women v. Pataki, 261 F.3d 156, 164 (2d Cir. 2001).

"To determine whether a plaintiff was deprived of property without due process of law in violation of the Fourteenth Amendment, [the Court] must first identify the property interest involved." O'Connor v. Pierson, 426 F.3d 187, 196 (2d Cir. 2005). Plaintiff contends that Defendants' conduct "violated the property rights that he possessed as a tenured police officer," but he does not specify which property rights were violated. (Am. Compl. ¶ 65.) Accordingly, the Court addresses each allegation in the Complaint which could reasonably be construed as an

6

attempt to claim a deprivation of property. The allegations are: (1) that Plaintiff had to forfeit thirty-six hours of accrued leave (id. ¶ 42); (2) that he was continuously assigned to base duty for several months (id. ¶¶ 30, 46); (3) that he received multiple written reprimands (id. ¶¶ 21-22, 35, 37-39, 55); (4) that he was suspended from duty for two weeks (id. ¶ 49); and (5) that he suffered damage to his reputation and career (id. ¶ 68). None of Plaintiff's allegations implicates a constitutionally protected property interest.

   *1. Deprivation of Accrued Leave*

Plaintiff alleges that Defendants "required [him] to forego thirty-six (36) hours of accrued leave time." (Am. Compl. ¶ 42.) In order for Plaintiff to have a constitutionally protected property interest in his accrued leave, such interest must "stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). In the absence of a contractual entitlement or established policy, courts have held that there is no constitutionally protected property interest in receiving monetary payments in exchange for accrued leave. See, e.g., Bledsoe v. City of Horn Lake, Miss., 449 F.3d 650, 655 (5th Cir. 2006); Sbarra v. Port Auth. of New York & New Jersey, No. 10 Civ. 8580 (CM), 2011 WL 4344078, at *10-12 (S.D.N.Y. Sept. 9, 2011); Gendalia v. Gioffre, 606 F. Supp. 363, 366-67 (S.D.N.Y. 1985). Similarly, there is no constitutionally protected property interest in being permitted to use one's accrued leave at a particular time or where the parties have agreed that vacation requests shall be approved only at the employer's discretion. See Stewart v. City of New York, No. 11 Civ. 6935 (CM), 2012 WL 2849779, at *13-14 (S.D.N.Y. July 10, 2012) (holding that there was no constitutionally protected property interest where plaintiff was denied the right to take vacation); McNill v. New York City Dep't of Correction, 950 F. Supp. 564, 572-

73 (S.D.N.Y. 1996) (same, where plaintiff was denied preferred vacation times); Demuro v. Westchester Cnty. Dep't of Corr., No. 85 Civ. 4708, 1986 WL 10728, at *1-2 (S.D.N.Y. Sept. 25, 1986) (same, where the plaintiff was denied vacation leave).

Here, Plaintiff does not assert that New York state law or his employment contract entitled him to keep the accrued leave at issue. In fact, Plaintiff does not cite to any provision of New York law or to his employment contract. (See, e.g., Pl.'s Opp'n 10 (stating vaguely that "there were a panoply of rules, regulations and understandings of which the individual defendants should have been aware and which created an expectation that plaintiff would be judged pursuant thereto").) Plaintiff's Complaint appears to allege solely that he received a Command Discipline and the deduction of his accrued leave as disciplinary sanctions for misconduct. (See Am. Compl. ¶ 42.) From Plaintiff's allegations, there is thus no apparent "independent source" that would give Plaintiff a constitutionally protected property interest in the forfeited leave. See Roth, 408 U.S. at 577. The Court, therefore, cannot conclude that Plaintiff has alleged a procedural due process violation based on his forfeited leave.

*2. Assignment to Base Duty*

Plaintiff also alleges that he was assigned to base duty continuously for several months and that the base-duty assignment was a punishment given to him because Terrett and Finneran were unfairly targeting him with punitive treatment. (Am. Compl. ¶¶ 25-26, 30-33, 46.)

Plaintiff's claim that he was assigned to an unpopular, tedious work assignment does not implicate any constitutionally protected property interest. As the court stated in Boland v. Police Dep't of City of N.Y., "[w]hile [P]laintiff articulates distaste for his reassignment, he does not articulate a property interest. There is no constitutionally protected right to . . . have, or not have, a specific position with specific duties in a specific location." No. 06 Civ. 15312 (DC), 2007

8

WL 4225484, at *2 (S.D.N.Y. Nov. 29, 2007) (holding that a police officer challenging assignment to a position which was ineligible for overtime pay and which he alleged was "an unpopular post that worsened his depression" did not "articulate a property interest").  Like the police officer whose procedural due process claim was dismissed in Guida v. Police Dep't of City of New York, No. 96 Civ. 0355 (JSM), 1997 WL 269508, at *3 (S.D.N.Y. May 20, 1997), Plaintiff "points to no New York statute or other authority . . . that gives him a protectable right to continued assignment to a particular Division, location or set of duties within the Police Department."  See also Caniello v. City of New York, No. 00 Civ. 3009 (BSJ), 2001 WL 11061, at *1 (S.D.N.Y. Jan. 4, 2001) (holding that there was no alleged constitutional deprivation where Fire Department employee's assignment to desk duty left him ineligible for overtime pay).

To establish a constitutionally protected property interest in a particular work assignment, Plaintiff would have to show that the MTA's conduct had created a reasonable expectation that he was entitled to that assignment.  For example, in Ezekwo v. New York City Health & Hospitals Corp., 940 F.2d 775, 783 (2d Cir. 1991), the defendant, a hospital, created a constitutionally protected property interest in the position of chief resident by maintaining a consistent practice of rotating all third-year medical residents into the position and by repeatedly informing the plaintiff, a medical resident, that she would rotate through that position.  In addition, the assignment in Ezekwo was associated with a pay increase, it "denote[d] the culmination of years of study," and it was "a position that an individual [could] occupy only once in his or her career."  Id.  Plaintiff here has not alleged any comparable facts.

Accordingly, Plaintiff has not demonstrated that his assignment to base duty implicates a constitutionally protected property interest.

9

*3. Suspension from Duty*

Plaintiff alleges that he was suspended from his job for two weeks, but he does not allege that he was suspended without pay. (Am. Compl. ¶¶ 48-49.) Courts have repeatedly held that suspension with pay does not constitute the deprivation of a constitutionally protected interest. For example, in MacFall v. City of Rochester, 746 F. Supp. 2d 474, 479, 488 (W.D.N.Y. 2010), the district court dismissed the procedural due process claims of police officers who were suspended with pay pending the outcome of an internal misconduct investigation. In affirming the district court's decision, the Second Circuit stated that "an employee who is on leave and receiving his normal salary is not deprived of a property right merely [by] virtue of being relieved of his job duties." MacFall v. City of Rochester, 495 F. App'x 158, 160 (2d Cir. 2012) (quoting O'Connor, 426 F.3d at 199 (internal quotation marks omitted)); see also Fitzgerald v. City of Troy, No. 10 Civ. 451 (MAD) (RFT), 2012 WL 5986547, at *20 (N.D.N.Y. Nov. 28, 2012) (holding that a police officer who was placed on paid administrative leave had not alleged deprivation of constitutionally protected property interest); Gugliotti v. Miron, No. 08 Civ. 442 (JCH), 2010 WL 3025223, at *3, 7-9 (D. Conn. July 30, 2010) (holding that "a suspension with pay, even when prohibited by a [collective-bargaining agreement], does not 'rise[] to the level of a legitimate claim of entitlement protected by the Due Process Clause'" where police officer was placed on administrative suspension pending outcome of internal investigation); Montefusco v. Nassau Cnty., 39 F. Supp. 2d 231, 239 (E.D.N.Y. 1999) (holding that public school teacher who was suspended with pay pending outcome of disciplinary investigation had not alleged deprivation of constitutionally protected property interest). Accordingly, Plaintiff's two-week paid suspension does not constitute the deprivation of a constitutionally protected property interest.

*4. Written Reprimands*

Plaintiff also states that he was given several written disciplinary reprimands, or "Letters of Instruction" and a "Command Discipline." (Am. Compl. ¶¶ 23, 35, 37-39, 55.) Plaintiff claims that Letters of Instruction "can affect . . . transfers and promotions." (Id. ¶ 23.) However, Plaintiff does not allege that he was in fact denied a transfer or promotion. Even if he had so alleged, the Second Circuit has held that an employee generally does not have a constitutionally protected property interest in obtaining—or being considered for—a promotion. See McMenemy v. City of Rochester, 241 F.3d 279, 287-88 (2d Cir. 2001). Similarly, courts have held that no constitutional interest is implicated merely by a job transfer or the denial of a job transfer. See, e.g., Boland, 2007 WL 4225484, at *2; Hajjar v. Dayner, 96 F. Supp. 2d 142, 144 (D. Conn. 2000) (holding that a social worker had no constitutionally protected property interest in transferring to a different work shift: "all of [the cases involving transfers] agree that there is no property interest *per se* in a transfer or, by analogy, a refusal to transfer"). Therefore, even if the written reprimands had prevented Plaintiff from obtaining a promotion or transfer, they would still fail to supply the basis for a procedural due process violation.

*5. Damage to Reputation and Career*

Plaintiff also alleges that he "has suffered and continues to suffer damage to his career, reputation, and standing." (Am. Compl. ¶ 68.) A procedural due process claim can be based on damage to reputation where a plaintiff shows that the defendant made a stigmatizing statement which injured a tangible interest and that adequate process was not provided. Segal v. City of New York, 459 F.3d 207, 212 (2d Cir. 2006). "Such an action is referred to as a stigma-plus claim." Id. A stigma-plus claim, in essence, "provides a remedy for government defamation under federal constitutional law," but only under narrow circumstances. See Sadallah v. City of

11

Utica, 383 F.3d 34, 38 (2d Cir. 2004) (Sotomayor, J.).

A plaintiff must establish two elements to make out a stigma-plus claim:

> (1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights.

Vega v. Lantz, 596 F.3d 77, 81 (2d Cir. 2010) (quoting Sadallah, 383 F.3d at 38 (internal quotation marks omitted)). Here, Plaintiff "has not established a threshold requirement—the existence of a reputation-tarnishing statement that is false." Id. at 82. Nowhere in the Complaint does Plaintiff allege that any of the Defendants publicly made a derogatory, false statement about him.

Moreover, Plaintiff's bare allegation of damage to reputation and career, by itself, is inadequate to establish the second element of a stigma-plus claim—a material burden or alteration of his status or rights. Id. at 81. The Complaint says nothing concrete about whether or how the alleged damage affected any tangible interest of Plaintiff's. Although Plaintiff claims damage to his career, he does not describe the damage; for example, he does not claim that he was denied a promotion or that his job status was affected in any way. Thus, Plaintiff's bald assertion of damage to his career is a "mere conclusion[] . . . not entitled to the assumption of truth." Ashcroft, 556 U.S. at 664.

For these reasons, Plaintiff's procedural due process claim must be dismissed. Because Plaintiff's claim does not implicate any constitutionally protected property interest, the Court will not evaluate the adequacy of the process that Plaintiff was afforded. See Colburn v. Trustees of Indiana Univ., 973 F.2d 581, 592 (7th Cir. 1992) ("[B]ecause plaintiffs did not have a property interest . . . we do not consider the adequacy of the procedures utilized . . . ."); Missere v. Gross, 826 F. Supp. 2d 542, 559 & n.12 (S.D.N.Y. 2011) (finding that due process

claim did not implicate a constitutionally protected property interest and dismissing claim without analyzing adequacy of process); Johnson ex rel. Johnson v. Columbia Univ., No. 99 Civ. 3415 (GBD), 2003 WL 22743675, at *13-14 (S.D.N.Y. Nov. 19, 2003) (same).

### B. Substantive Due Process Claim

Plaintiff labels Count II both as a substantive due process claim and a hostile work environment claim. (Am. Compl. 11.) The Court will analyze each theory in turn, first addressing substantive due process.

Plaintiff alleges that Defendants' actions were "pervasive, ongoing, malicious" and "arbitrary, capricious, offensive, conscience shocking, and an abuse of power," and that Defendants were "motivated by no legitimate purpose, but rather [by] . . . intimidation, harassment, and malice." (Id. ¶¶ 70-72, 74.) He asserts that he "has suffered and continues to suffer damage to his career, reputation, and standing." (Am. Compl. ¶ 77.)

"[T]he substantive component of the [Due Process] Clause . . . protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992) (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)). "[S]ubstantive due process protections extend only to those interests that are implicit in the concept of ordered liberty, rights so rooted in the traditions and conscience of our people as to be ranked as fundamental. Generally, interests related to employment are not protected." Walker v. City of Waterbury, 361 F. App'x 163, 165 (2d Cir. 2010) (internal quotation marks and citations omitted). A substantive due process claim must allege conduct that is "so egregious, so outrageous, that [it] may fairly be said to shock the contemporary conscience." Men of Color Helping All Soc., Inc. v. City of Buffalo, 529 F. App'x 20, 24 (2d Cir. 2013) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8

13

(1998)). In addition, "a plaintiff must demonstrate, *inter alia*, that he was deprived of a fundamental constitutional right by government action . . . ." Walker, 361 F. App'x at 165 (citations omitted). A government employer violates an employee's substantive due process rights only when it abuses power that it holds because of its role as a government actor. See McClary v. O'Hare, 786 F.2d 83, 89 (2d Cir. 1986) ("We do not think that improper actions taken by employers violate an employee's substantive due process rights simply because that employer is a government official. This is simply not a case in which a government official, because of his unique position as such, was able to impose a loss on an individual."); Spencer v. City of New York, No. 06 Civ. 2852 (KMW), 2007 WL 1573871, at *2 (S.D.N.Y. May 30, 2007) (holding that a party alleges a violation of substantive due process "only when a governmental employer abuses some power unique to its role as a governmental entity." (quoting Sussman v. New York City Health & Hospitals Corp., No. 94 Civ. 8461 (DBS), 1997 WL 334964, at *12 (S.D.N.Y. June 16, 1997)).

Plaintiff fails to allege any abuse of power that is unique to Defendants' positions as government actors. See McClary, 786 F.2d at 89. Although Plaintiff does assert that Defendants' conduct was an abuse of power (Am. Compl. ¶ 71, 74), these allegations—like the allegations of damage to Plaintiff's career—are "mere conclusions . . . not entitled to the assumption of truth." Ashcroft, 556 U.S. at 664. Furthermore, Plaintiff has not alleged conduct egregious or outrageous enough to sustain a substantive due process claim. As outlined above, the gravamen of Plaintiff's allegations is that Defendants harassed him and disciplined him on numerous occasions—including by suspending him with pay—for minor violations which Plaintiff does not deny committing, but which he asserts were routinely overlooked when committed by other officers. He also claims that Defendants instructed other officers "not to be

14

friendly with [him]," to "stay away" from him, and "to harass and target [him]," and that Defendants had no legitimate purpose for their conduct, but rather acted maliciously to harass and injure him.  (Am. Compl. at ¶¶ 51-52, 54, 72.)  Such alleged conduct, although seemingly arbitrary and perhaps unfair, simply does not shock the conscience or constitute a "malicious and sadistic abuse[] of government power . . . intended only to oppress or to cause injury." Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 252 (2d Cir. 2001); see also Interport Pilots Agency, Inc. v. Sammis, 14 F.3d 133, 145 (2d Cir. 1994) ("Overzealous or erroneous government action alone does not give rise to a constitutional violation.").

Accordingly, Plaintiff has not stated a claim for a violation of substantive due process.

**C. Hostile Work Environment Claim**

Plaintiff also labels Count II as a hostile work environment claim.  In addition to the allegations discussed above, Plaintiff asserts that Defendants' actions "were pervasive, ongoing, malicious, and were designed to adversely affect the terms and conditions of plaintiff's employment" (Am. Compl. ¶ 70); "constitute[d] systematic and intentional harassment" (id. ¶ 71); and were undertaken "for purposes . . . including but not limited to intimidation, harassment, and malice" (id. ¶ 72).  In particular, he alleges that Defendants made harassing and intimidating statements to him and that they instructed other employees to harass and avoid him as well.  (Id. ¶¶ 27-29, 41, 44, 51-52, 54.)  The Court construes these statements as an attempt to make out a hostile work environment claim under the Equal Protection Clause of the Fourteenth Amendment.

"In order to establish a claim of hostile work environment, a plaintiff must produce evidence that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and

15

create an abusive working environment." Demoret v. Zegarelli, 451 F.3d 140, 149-50 (2d Cir. 2006) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).  In addition, a plaintiff must demonstrate that the hostility was based on plaintiff's membership in a protected class.  See Fernandez v. City of New York, No. 12 Civ. 2125 (RWS), 2012 WL 2402642, at *4 (S.D.N.Y. June 26, 2012); Cohen v. Litt, 906 F. Supp. 957, 964 (S.D.N.Y. 1995).

Plaintiff has not asserted membership in a protected class.  Indeed, Plaintiff appears to acknowledge that he is not a member of a protected class.  (See Pl.'s Opp'n 13 ("It is not necessary for [Plaintiff] to allege membership in a class . . . .").)  Accordingly, Plaintiff's hostile work environment claim must be dismissed.  See, e.g., Seale v. Madison Cnty., 929 F. Supp. 2d 51, 79 (N.D.N.Y. 2013) (dismissing hostile work environment claim brought under the Equal Protection Clause because Plaintiff failed to allege membership in a protected class).

### D. Class-of-One Equal Protection Claim

Count III also alleges a violation of the Equal Protection Clause.  (Am. Compl. ¶¶ 79-85.) Plaintiff asserts that the "differing manner in which defendants . . . treated plaintiff is not rationally or adequately related to a legitimate state interest nor does it serve a substantial government interest" and that "[o]thers similarly situated have not been generally proceeded against because of the conduct of the type forming the basis of the actions undertaken against plaintiff."  (Id. ¶ 79-80.).  He further states that Defendants acted "based upon impermissible considerations and [were] motivated by a bad faith intent to injure him."  (Id. ¶ 81.)  As previously noted, Plaintiff does not allege that he belongs to a protected class, and so the Court construes his claim as being brought under a "class-of-one" theory.

The Supreme Court has held that an equal protection claim can be brought under a class-of-one theory, "where the plaintiff alleges that [he] has been intentionally treated differently

16

from others similarly situated and that there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Recognizing class-of-one claims is appropriate because, "when it appears that an individual is being singled out by the government, the specter of arbitrary classification is fairly raised, and the Equal Protection Clause requires a rational basis for the difference in treatment." Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 602 (2008) (quoting Olech, 528 U.S. at 564) (internal quotation marks omitted). The Supreme Court has also held, however, that "the class-of-one theory of equal protection does not apply in the public employment context." Engquist, 553 U.S. at 598. It explained:

> [T]he class-of-one theory of equal protection—which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review—is simply a poor fit in the public employment context. To treat employees differently is not to classify them in a way that raises equal protection concerns. Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship.

Id. at 605.

Plaintiff's class-of-one equal protection claim must fail, because it challenges the actions of a public employer. Count III of the Complaint is therefore dismissed. See, e.g., Conyers v. Rossides, 558 F.3d 137, 151-52 (2d Cir. 2009) (affirming district court's dismissal of class-of-one equal protection claim against Federal Aviation Administration because it was barred by Engquist).

**E. Municipal Liability**

Plaintiff has named the MTA as a defendant in this lawsuit. The MTA, as an agency of the City of New York, cannot be sued directly. See, e.g., Jones v. Nat'l Commc'n and Surveillance Networks, 409 F. Supp. 2d 456, 469 (S.D.N.Y. 2006) ("City agencies, like federal and state agencies, are immune to suit to the extent that the suits 'shall be brought in the name of

the City of New York and not in that of any agency.'" (quoting N.Y. City Charter § 396)).

Even if Plaintiff had properly named the City of New York as a defendant, that claim would also have to be dismissed. "[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Torraco v. Port Auth. of N.Y. and N.J., 615 F.3d 129, 140 (2d Cir. 2010) (alteration in original). Because Plaintiff has failed to allege any violation of a constitutional right, he cannot sustain a claim for liability against the City. See, e.g., Matican v. City of New York, 524 F.3d 151, 159 (2d Cir. 2008) (dismissing claim against City of New York because "no constitutional violation occurred").

Accordingly, the Court need not address Defendants' argument that Plaintiff failed to plead conduct that would constitute an official policy or custom. (Defs.' Mem. of Law 20-22.) The Court notes, however, that Plaintiff's own assertions that Defendants failed to comply with their own procedures and that Plaintiff was singled out and treated differently from other officers contradict the notion that there was an official policy or custom. See, e.g., McGann v. City of New York, No. 12 Civ. 5746 (PAE), 2013 WL 1234928, at *9 (S.D.N.Y. Mar. 27, 2013) (finding plaintiff's allegation that the City had a "policy to violate the constitutional rights of [plaintiff], and only [plaintiff] . . . [to be] as implausible as it is conclusory.").

**F. State Law Claim**

In addition to his federal law claims, Plaintiff also brings a claim under New York state law for intentional infliction of emotional distress. A district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). In this case, there is no independent basis for

original jurisdiction over Plaintiff's state law claim, because the parties have not alleged complete diversity. See 28 U.S.C. § 1332(a)(1). The Court, therefore, must decide whether to exercise supplemental jurisdiction over that claim.

District courts "balance[] the traditional values of judicial economy, convenience, fairness, and comity, in deciding whether to exercise [supplemental] jurisdiction." Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (internal quotation marks and citation omitted). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). Because this case is still at a very early stage, with no discovery having yet occurred, judicial economy, convenience, and fairness do not weigh in favor of supplemental jurisdiction. See, e.g., TZ Manor, LLC v. Daines, No. 08 Civ. 3293 (KMK), 2009 WL 2242436, at *10 (S.D.N.Y. July 28, 2009) (declining to exercise jurisdiction over remaining state law claims where all federal law claims had been dismissed and discovery had not begun). In addition, declining to exercise jurisdiction is consistent with the value of comity. Id. The Court therefore declines to exercise supplemental jurisdiction over Plaintiff's claim for intentional infliction of emotional distress.

**IV.   Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss is granted and Plaintiff's Complaint is dismissed in its entirety. Defendants' request for dismissal with prejudice, however, is denied. See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead."); Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend pleadings] when justice so

requires."). Plaintiff has thirty days to file a second amended complaint, provided that he has a good faith basis for doing so. Otherwise, the case will be closed and all of Plaintiff's federal law claims will be deemed dismissed with prejudice. The Clerk of Court is respectfully directed to close the motion at docket number 10.

SO ORDERED.

Dated:     February 26, 2014
           New York, New York

_____
Ronnie Abrams
United States District Judge